[No. S001726. Dec. 20, 1990.]

JACK SHOEMAKER, Plaintiff and Appellant, v.
BEVERLEE A. MYERS, as Director, etc., et al., Defendants and
Respondents.

## COUNSEL

Carroll, Burdick & McDonough, Cathleen A. Williams, Rockne A. Lucia, Jr., and Gary M. Messing for Plaintiff and Appellant.

Joseph Posner, McGuinn, Hillsman & Palefsky, Cliff Palefsky, Gerritt Jan Buddingh', Elise S. Rose, Shawn R. Cloughesy, Siegel, Friedman & Yee, Eric Weaver, Joan M. Graff, William C. Quackenbush, John True and Christopher Ho as Amici Curiae on behalf of Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Elisabeth C. Brandt, Joseph O. Egan and Eileen Ceranowski, Deputy Attorneys General, for Defendants and Respondents.

Musick, Peeler & Garrett, James E. Ludlam, Charles F. Forbes, Greines, Martin, Stein & Richland, Alan G. Martin, Paul De Marco, Brenda S. Reid, O'Melveny & Myers, Stephen P. Pepe, Tom A. Jerman and Craig A. Horowitz as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**ARABIAN, J.**—This case presents the question whether the exclusive remedy provisions of the workers' compensation law bar other civil claims for damages arising from wrongful employment termination, where the complaint includes allegations of physical disability resulting from the termination. We conclude that disabling injuries, whether physical or mental, arising from termination of employment are generally within the coverage of workers' compensation and subject to the exclusive remedy provisions, unless the discharge comes within an express or implied statutory exception or the discharge results from risks reasonably deemed not to be within the compensation bargain.

### I. Facts

This case comes to us after the sustaining of a general demurrer; accordingly, the rule is that we accept as true all the material allegations of the complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) The facts as disclosed by plaintiff's pleadings are as follows.

Plaintiff Jack Shoemaker (plaintiff) had been an investigator for the Department of Health Services (Department) for nine years, and had an exemplary record in civil service for twenty-two years up to the time of his termination.

In 1979, a letter to the Attorney General from the Office of the Lieutenant Governor asserted that certain family planning health care centers (health centers) were operating illegally because lay workers were performing services required to be performed by licensed medical professionals. The health centers were receiving funds from the Office of Family Planning (OFP) division of the Department. In 1980, plaintiff was assigned to investigate the allegations of illegal operations, and plaintiff ultimately filed a

report concluding not only that the health centers had indeed utilized unlicensed personnel to perform medical functions, but that Beverlee A. Myers, director of the Department, and other high Department officials improperly approved funding for the health centers with knowledge that the health centers were engaging in such illegal practices. After plaintiff made his report outlining possible illegal practices by Department officials, his supervisors in the Division of Audits and Investigations, particularly Charles Shuttleworth, who was chief of the division, improperly interfered with plaintiff's investigation by forbidding him to make contacts in furtherance of the investigation or report his findings or share with appropriate law enforcement agencies the information he had uncovered. In December 1980, plaintiff complained of the interference and asked to be relieved of his assignment to the health centers investigation. Because of his complaint plaintiff received a disciplinary counseling. His supervisors further threatened, intimidated and harassed him on account of his complaints between December 1980 and May 1981.

In May 1981, a magazine article about the health centers appeared, criticizing the health centers' use of lay health workers and calling into question Beverlee A. Myers's role in continuing funding for the health centers. After the article appeared, Shuttleworth interrogated plaintiff and other investigators, and threatened to fire any investigator who had "leaked" information to the press unless he or she "confessed."

The events immediately precipitating plaintiff's termination began in November 1981, when a psychiatrist complained to the Department that Department investigators, in the course of another investigation unrelated to the health centers matter, had harassed two of the psychiatrist's patients. Although plaintiff was not in fact involved in that investigation, the psychiatrist mistakenly identified plaintiff as one of the investigators. Plaintiff's supervisors thereafter orally interrogated him at least two times, on or about December 4 and December 16, 1981, about the misconduct charges. Shuttleworth then demanded that plaintiff provide written answers and explanations to the same questions he had already answered orally. Plaintiff, by a letter memorandum dated December 21, 1981, stated he would not answer further questions on the matter without legal representation in accordance with the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.). Upon plaintiff's assertion of his right to representation, he was fired for insubordination by Shuttleworth and, on an intradepartmental appeal, senior Department officials upheld the termination, which became effective January 11, 1982.

Plaintiff filed an administrative appeal to the State Personnel Board. On January 26, 1982, the State Personnel Board ordered plaintiff reinstated.

After plaintiff won reinstatement, Shuttleworth and other senior officers made statements to the effect that, even though they knew the termination was not proper, they wanted to cause plaintiff as much trouble as possible, or to the effect that, if it had been anyone other than plaintiff, he would not have been fired.

## II. Procedural History in the Trial Court

On December 9, 1982, plaintiff filed the instant action[1] against the defendants enumerated in the margin,[2] alleging both that the termination was actually in retaliation for the health centers investigation and report, and that the pretextual reason given by the Department, that he was fired for "insubordination" for invoking his right to representation under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.), was also improper.

By stipulation, plaintiff filed a verified first amended complaint on June 8, 1983. The first amended complaint set forth causes of action for (1) "wrongful termination," (2) wrongful termination in violation of former Government Code section 19683 (hereafter referred to as section 19683; see fn. 11, *post*), (3) wrongful termination in violation of fundamental public policy (citing *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), (4) breach of contract and the implied covenant of good faith and fair dealing (citing *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]), (5) wrongful interference with a business relationship and wrongful inducement of breach of contract, (6) intentional infliction of emotional distress, (7) fraud and deceit, (8) violation of civil rights (42 U.S.C. § 1983), (9) injunctive relief, and (10 and 11) attorney fees and attorney fees on behalf of the Peace Officers Research Association of California (PORAC) legal defense fund.

---

[1] Plaintiff was terminated on December 23, 1981. The termination became effective January 11, 1982, after denial of plaintiff's intradepartmental appeal. Plaintiff further exhausted his administrative remedies by filing a claim for damages arising from the wrongful termination with the State Board of Control on March 25, 1982. The State Board of Control denied the claim on August 17, 1982, and plaintiff thereafter filed his original complaint in superior court on December 9, 1982. One reason given by the court for sustaining the defendants' demurrers was that plaintiff's State Board of Control claim was not timely. Because of its disposition of the case on other grounds, the Court of Appeal did not address this issue. (See *post*, p. 26.)

[2] Beverlee A. Myers, director of the Department; Barry Dorfman, assistant director of the Department; Richard H. Koppes, an attorney in the Office of Legal Services of the Department; Ted Scott, in the Office of the Executive Secretary of the Department; Philip G. Weiler, chief deputy director of Preventive Health Services in the Department; Jack Reagan, deputy director of the Audits and Investigations Division of the Department; Charles Shuttleworth, chief of the Audits and Investigations Division of the Department; the Department; and the State of California.

Defendants demurred to the first amended complaint. Plaintiff had included allegations of physical illness and disability resulting from the acts of defendants. The trial court sustained the demurrer with leave to amend, as to the first (wrongful termination), second (§ 19683), third (*Tameny* [fundamental public policy]) and sixth (emotional distress) causes of action, on the ground that those causes of action were barred by the exclusive remedy provisions of the workers' compensation law. The demurrer to the seventh cause of action (fraud and deceit) was sustained as to all defendants for plaintiff's failure to set forth sufficient facts, and as to the State of California because of immunity under Government Code section 818.8. The court held the eighth cause of action (civil rights) did not allege deprivation of a constitutionally protected right, the ninth cause of action (injunction) did not allege sufficient facts to warrant injunctive relief, and the eleventh cause of action on behalf of PORAC was improper because PORAC appeared to lack standing to sue. Plaintiff was granted 30 days to amend his complaint.

In his verified second amended complaint, plaintiff realleged all the same causes of action, but essentially omitted reference to physical injury, except in his cause of action for violation of civil rights. Defendants again demurred, asserting the bar of the workers' compensation exclusivity provisions against the first, second, third, sixth, and seventh causes of action. The trial court sustained defendants' demurrer with leave to amend, but indicated to plaintiff he could not amend by simply deleting allegations of physical injury from a verified complaint without adequate explanation. The demurrer was sustained without leave to amend as to the causes of action for violation of civil rights, injunction, and attorney fees.

Plaintiff's third amended complaint realleged the causes of action for (1) "wrongful termination," (2) unlawful retaliatory termination in violation of section 19683, (3) wrongful discharge in violation of fundamental public policy (*Tameny* v. *Atlantic Richfield Co., supra*, 27 Cal.3d 167), (4) breach of contract and the implied covenant of good faith and fair dealing (*Cleary* v. *American Airlines, Inc., supra*, 111 Cal.App.3d 443), (5) interference with business relationship and inducement of breach of contract, and (6) intentional infliction of emotional distress. Plaintiff again claimed only emotional injury as to those causes of action, omitting any reference to physical injury. Defendants again demurred, and this time the trial court sustained the demurrer without leave to amend. The trial court stated that plaintiff had failed to explain the omission of the allegations of physical injury that had appeared in the verified first amended complaint, and thus concluded the

causes of action were barred by the exclusivity provisions of the workers' compensation law.[3] Judgment of dismissal was entered.

### III. The Court of Appeal Decision

The Court of Appeal observed that some decisions have allowed a civil cause of action for intentional infliction of emotional distress where the employer's misconduct caused only emotional distress without disability compensable under the workers' compensation law (e.g., *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447]), but that where compensable disability was caused, the exclusive remedy provisions of the Workers' Compensation Act (Act) control (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743]). The court found plaintiff's allegations of physical injury here, included in his verified first amended complaint, were not mere "oblique references," or "lightly traced" allegations of physical injury or disability as in *McGee* v. *McNally* (1981) 119 Cal.App.3d 891 [174 Cal.Rptr. 253]; rather, they were sufficiently substantial that plaintiff could not simply delete them without explanation. The court reasoned that because plaintiff's allegations of physical injury were thus required to be taken into account, plaintiff did not come within the *Renteria* exception (i.e., emotional injury only, with no compensable disability), and all causes of action in the third amended complaint were therefore barred by the exclusive remedy provisions of the workers' compensation law.

Next, the court held that allegations of intentional employer misconduct are not alone sufficient to permit a civil action outside the workers' compensation system. (*Cole* v. *Fair Oaks Fire Protection Dist., supra*, 43 Cal.3d 148.) Disciplinary actions, such as termination, are part of normal employment risks, and such supervisory conduct by an employer is inherently intentional. (*Ibid.*)

---

[3] The trial court also sustained the demurrer on the grounds that plaintiff's allegations actually amounted to a malicious prosecution action as to which defendants had immunity under Government Code sections 821.6 and 815.2, subdivision (b), and that the causes of action alleged in the complaint were beyond the scope of the claim filed with the State Board of Control. On the latter ground, the claim was thus untimely as to any cause of action accruing before January 15, 1989, and since most of plaintiff's causes of action had arisen before that time, they could not be prosecuted. Further, the trial court sustained the demurrer as to the fourth cause of action on the ground of uncertainty because the implied covenant of good faith and fair dealing was not necessarily to be read into plaintiff's employment contract and, even assuming it were, plaintiff had alleged nothing more than a wrongful termination, redundant to the other causes of action he had pled. The fifth cause of action (interference with contract and business relationship) was held insufficient because it failed to allege the existence of a valid contract, that defendants knew of the contract, that a party breached or a third party wrongfully interfered with plaintiff so he could not perform under its terms, or that the breach or interference resulted in damage to plaintiff. The Court of Appeal did not address these additional issues. (See *post*, p. 26.)

The court then rejected plaintiff's argument that his "whistleblower" claims under section 19683 would support a civil action notwithstanding the exclusive remedy provisions of the workers' compensation law, holding that, to the extent the two statutes were in conflict, the workers' compensation law was the more specific of the two and its provisions therefore controlled.

Finally, the court held that plaintiff did properly state a cause of action against the individual defendants for violation of plaintiff's civil rights (freedom of speech and freedom of association). The trial court was therefore directed to overrule the demurrer to the second[4] amended complaint as to the cause of action for violation of civil rights and an ancillary claim for attorney fees.

## IV. Discussion

### A. Consideration of Physical Injury Allegations

■ Preliminarily, we note that plaintiff has evidently abandoned his contention, raised before the Court of Appeal, that he was entitled to rely on the third amended complaint, omitting the original allegations of physical injury. The general rule, as the Court of Appeal noted, is that material factual allegations in a verified pleading that are omitted in a subsequent amended pleading without adequate explanation will be considered by the court in ruling on a demurrer to the later pleading. (*Lamoreux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 623 [311 P.2d 1].) Plaintiff's reliance on *McGee* v. *McNally, supra,* 119 Cal.App.3d 891, was misplaced, as the allegations of physical injury included in plaintiff's first amended complaint went far beyond the "lightly traced" allegations in *McGee*; plaintiff here actually alleged that his injuries caused him to lose time from work and that he believed he would suffer some permanent disability. The Court of Appeal correctly concluded that the sufficiency of plaintiff's third amended complaint must be tested taking into consideration the allegations of physical injury from the first amended complaint. (See *Lamoreux* v. *San Diego etc. Ry. Co., supra,* 48 Cal.2d 617, 623.)

The Court of Appeal, in reliance on *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, reasoned that, because the allegations of physical injury were so substantial, all plaintiff's causes of action (except the civil rights cause of action) were barred by the workers' compensation

---

[4] In addition to the demurrer to the causes of action in the third amended complaint, the Court of Appeal reviewed the propriety of the demurrer to the cause of action for violation of civil rights pleaded in the second amended complaint as to which the trial court had earlier sustained defendants' demurrer without leave to amend.

exclusivity provisions. In so holding, however, the Court of Appeal failed to consider the full implications of our opinion in *Cole,* and incorrectly analyzed the various causes of action pled in plaintiff's third amended complaint. A determination whether a cause of action is barred by the exclusive remedy provisions of the workers' compensation law must take into account not only the facts alleged (i.e., of physical injury) but also their relation to the scope and purposes of the workers' compensation statutory scheme.

### B. The Statutory Exclusive Remedy Provisions

Because the injuries alleged occurred in 1981, they are governed by the Act as it read before 1982. Former Labor Code section 3600 stated: "Liability for the compensation provided by this division, *in lieu of any other liability whatsoever to any person* except as provided in Section 3706 [i.e., where the employer fails to obtain compensation coverage], shall, without regard to negligence, exist against an employer *for any injury* sustained by his employees arising out of and in the course of the employment *and for the death* of any employee if the injury proximately causes death, in those cases where the . . . conditions of compensation concur . . . ." (Italics added. See Stats. 1978, ch. 1303, § 5, p. 4262.)

The "conditions of compensation" as then enumerated[5] included: (1) that the employer and employee are subject to the Act, (2) that, "at the time of

---

[5] In 1982, Labor Code section 3600 was amended to read in relevant part as follows: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558 [respectively, where the conditions of compensation do not concur, where the employer fails to obtain compensation coverage, or where the employer removes or fails to install safety guards on power presses], shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the . . . conditions of compensation concur . . . ." (Stats. 1982, ch. 922, § 4, p. 3365.)

The relevant "conditions of compensation" were renumbered, but their substance remained unchanged under the 1982 version of section 3600; however, a new subdivision (b) was added which provided: "(b) Where an employee, or his or her dependents, receives the compensation provided by this division and secures a judgment for, or settlement of, civil damages pursuant to those specific exemptions to the employee's exclusive remedy set forth in subdivision (b) of Section 3602 and Section 4558, such compensation as is paid under this division shall be credited against the judgment or settlement, and the employer shall be relieved from the obligation to pay further compensation to, or on behalf of, the employee or his or her dependents up to the net amount of the judgment or settlement received by the employee or his or her heirs, or such portion of the judgment as has been satisfied." (Stats. 1982, ch. 922, § 4, p. 3366.)

Section 3600 was again amended in 1986 to add a new subdivision (a)(8), to the effect that to be compensable the injury must not have been caused by the injured employee's felonious act, for which he or she has been convicted. This change caused renumbering of the former subdivision (a)(8) as subdivision (a)(9). Additional nonsubstantive changes were also made. (Stats. 1986, ch. 755, § 1, p. 2474.)

the injury, the employee is performing services growing out of and incidental to [the] employment and is acting within the course of [the] employment," (3) that the injury is proximately caused by the employment, and (4) the injury is not caused by the employee's intoxication, the injury or death is not intentionally self-inflicted, the injury does not arise out of an altercation in which the employee is the initial physical aggressor, and the injury does not arise out of voluntary participation in recreational activities not reasonably required as part of the employment.[6] (Former Lab. Code, § 3600; see Stats. 1978, ch. 1303, § 5, p. 4262.)

Former Labor Code section 3601 provided in pertinent part as follows: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, *the exclusive remedy for injury or death* of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ."[7] (Italics added.) Former

---

[6] As noted above, plaintiff's termination was effective January 11, 1982. He was reinstated January 26, 1982. Thus, all or substantially all of the alleged emotional distress (and resulting physical injury) either occurred or began during the employment—not after the termination. This is not a case in which the employee was terminated and began to suffer emotional distress and physical injury only *after* the termination. We therefore need not address the requisite temporal and causal relationships between a termination and an injury because here plaintiff's injuries allegedly occurred either before the termination or after he was restored to his employment.

[7] As it read in 1981, former section 3601 provided an exception to the exclusive remedy provisions as against another employee for injury caused by unprovoked physical acts of aggression of the other employee or for injury caused by the other employee's intoxication. (Former § 3601, subd. (a)(l), (2).) Conduct not sustaining an independent civil action against another employee might nevertheless give rise to a finding of serious and willful misconduct under Labor Code sections 4553 or 4553.1.

Section 3601 was also amended in 1982 (Stats. 1982, ch. 922, § 5, p. 3366) and now provides as follows: "(a) Where the conditions of compensation set forth in Section 3600 concur, the *right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy* for injury or death of an employee *against any other employee of the employer* acting within the scope of his or her employment, except that an employee, or his or her dependents in the event of his or her death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against the other employee, as if this division did not apply, in either of the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee.

"(2) When the injury or death is proximately caused by the intoxication of the other employee.

"(b) In no event, either by legal action or by agreement whether entered into by the other employee or on his or her behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under paragraph (1) or (2) of subdivision (a).

"(c) No employee shall be held liable, directly or indirectly, to his or her employer, for injury or death of a coemployee except where the injured employee or his or her dependents

Labor Code section 3602 provided: "In all cases where the conditions of compensation do not concur, the liability of the employer is the same as if this division had not been enacted."[8]

In a series of decisions culminating in 1987 in *Cole v. Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, this court and the Courts of Appeal have struggled with the problem of defining the scope of these exclusive remedy provisions.

Reviewing many of the earlier decisions in *Cole,* we there synthesized certain principles pertinent to that question. ■ First, "[t]he basis of compensation and the exclusive remedy provisions is an injury sustained and arising out of the course of employment (former Lab. Code, §§ 3600, 3601) . . . ." (*Cole v. Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, 160.) Second, if the injuries did arise out of and in the course of the employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from the intentional conduct of the employer, and even though the employer's conduct might be characterized as egregious. "[A]n employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Ibid.*) Further, we noted

---

obtain a recovery under subdivision (a)." (Italics added.) The scope of section 3601 was restricted to coemployees after 1982.

[8] In 1982 section 3602 was amended. It now provides: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer.

"(b) An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances:

"(1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer.

"(2) Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer.

"(3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person.

"(c) In all cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted." (Stats. 1982, ch. 922, § 6, p. 3367.)

that the legal theory supporting such exclusive remedy provisions is a presumed "compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. (*Id.* at p. 158; see also *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 474 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1258 [250 Cal.Rptr. 718]; *Van Horn* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 457, 467 [33 Cal.Rptr. 169].) The function of the exclusive remedy provisions is to give efficacy to the theoretical "compensation bargain."

However, in *Cole* we also identified a number of instances in which the exclusive remedy provisions are not applicable. ■ First, the fundamental basis of workers' compensation is an injury sustained in and arising out of the course of employment when the injury is "personal physical injury or death." (*Cole* v. *Fair Oaks Fire Protection Dist., supra*, 43 Cal.3d 148, 160.) Conversely, the exclusive remedy provisions apply *only* in cases of such industrial personal injury or death. (See, e.g., *Howland* v. *Balma* (1983) 143 Cal.App.3d 899 [192 Cal.Rptr. 286] [workers' compensation not exclusive remedy for defamation]; *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402 [343 P.2d 787] [workers' compensation does not bar cause of action for fraudulent deprivation of claim against a third party].)

In addition, the exclusive remedy provisions are not applicable under certain circumstances, sometimes variously identified as "conduct where the employer or insurer stepped out of their proper roles" (*Cole* v. *Fair Oaks Fire Protection Dist., supra*, 43 Cal.3d 148, 161; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063]; see also *Johns-Manville Products Corp.* v. *Superior Court, supra*, 27 Cal.3d 465, 477-478), or "conduct of an employer having a 'questionable' relationship to the employment" (*Cole, supra*, 43 Cal.3d 148, 161; *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621]), but which may be essentially defined as not stemming from a risk reasonably encompassed within the compensation bargain. (*Cole, supra*, 43 Cal.3d at pp. 159, 161 [actions for damages permitted where employer's misconduct "was not considered a risk of the employment" or where "injury . . . did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment"]; *Johns-Manville Products Corp.* v. *Superior Court, supra*, 27 Cal.3d 465, 476, 477; *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277 [179 Cal.Rptr. 30, 637

P.2d 266] ["The purpose of the Act [is] to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee."].)

With these principles and limitations in mind, we turn to an examination of the allegations of plaintiff's third amended complaint.[9]

### C. Applicability of Exclusive Remedy Provisions to Plaintiff's Allegations

#### 1. "Wrongful Termination" Causes of Action

Plaintiff's third amended complaint enumerates several causes of action seeking damages for alleged wrongful termination from his employment.

Plaintiff initially contends the workers' compensation law does not apply at all to his claims, citing *Georgia-Pacific Corp.* v. *Workers' Comp. Appeals Bd.* (1983) 144 Cal.App.3d 72, 75 [192 Cal.Rptr. 643] (*Georgia-Pacific*) for the proposition that injuries from *termination* of employment do not constitute injuries "arising out of and in the course of employment" within the meaning of Labor Code section 3600.

In *Georgia-Pacific*, an employee, who had previously been hospitalized for nonindustrial mental problems, alleged he suffered an injury to his nervous system from work-related stress. Among other things, he had to oversee three working shifts from eight to thirteen hours per day. The stress continued for nearly two years when the employer told the employee his job was being eliminated, and he could choose either to accept a lower-paying job or to be laid off. The employee went home ill and did not return to work. The Workers' Compensation Appeals Board awarded compensation for injury to the employee's nervous system arising from the employment.

The employer sought review, contending that the psychological injury resulted from the termination of the employment rather than from the employment itself. The Court of Appeal held the evidence amply supported the board's finding that the injury was cumulative, and not only the result of the circumstances of the termination.[10] The court went on to state, how-

---

[9] As noted, the allegations of earlier versions of the complaint will be considered where necessary (e.g., improperly deleted allegations or causes of action as to which earlier demurrers were assertedly improperly sustained without leave to amend).

[10] Ultimately, however, the court annulled the award on the ground the evidence was insufficient to show industrial causation, because plaintiff's nonindustrial mental difficulties preceded the disability and because the medical reports lacked specificity with respect to industrial causation.

ever, that if the injury were caused by the termination, it would not have been compensable because it would not be work related.

The *Georgia-Pacific* court's dictum is not supported by logic or precedent. As we noted in *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, the actions of an employer which constitute a "normal part of the employment relationship" (*id.* at p. 160), i.e., risks encompassed within the compensation bargain, are subject to the exclusive remedy provisions of the Act. In *Cole,* the employer allegedly falsely accused the employee of misconduct, subjected him to a "kangaroo" disciplinary proceeding, publicly demoted him, gave him burdensome and menial duties, and even filed an application to force him to retire involuntarily. We held that such actions as demotion, transfer, discipline, and even the employer's attempt to force the employee into involuntary retirement, would be included within the ambit of workers' compensation. Nonconsensual termination of an employment relationship is indistinguishable from the kinds of actions enumerated in *Cole* and must therefore also be considered a normal and inherent part of employment.

The conclusion that injuries resulting from the termination of employment may be included within the scope of workers' compensation is further indicated by our decision in *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793 [195 Cal.Rptr. 681, 670 P.2d 335], where we considered, in the context of a disability retirement statute, the question whether disability resulting from termination of employment " 'ar[ose] out of and in the course of [the] employment.' " (*Id.* at p. 795.) There, a public employee was accused of dealing in illegal drugs and the employer, Los Angeles County, dismissed him. Ultimately, the charges of drug dealing were not substantiated and the employee was reinstated. However, as a result of the stress of the accusation, investigation, and attempted termination, the employee suffered a psychiatric disability and applied for a service-connected disability retirement. The county board of retirement denied the application on the ground the disability did not " 'aris[e] out of and in the course of his employment' as required by Government Code section 31720." (*Traub* v. *Board of Retirement, supra,* 34 Cal.3d 793, 795.)

The statutory language at issue in *Traub,* governing the requirements for service-connected disability, is virtually identical to Labor Code section 3600, stating that liability for workers' compensation exists against an employer for any injury sustained by an employee "arising out of and in the course of the employment."

In *Traub* we assumed, but did not decide, that there would be no connection to the employment if the charges of illegal drug activities were sus-

tained, but held that, even so, "when an employee is investigated and disciplined [i.e., terminated] by the employer on charges of misconduct that are unproved and therefore presumably false, and the discipline set aside, the resulting psychological stress and injury arises out of and in the course of employment within the meaning of [Government Code] section 31720." *Traub* v. *Board of Retirement, supra*, 34 Cal.3d 793, 801.)

We further note that Labor Code section 3202 provides that the workers' compensation law "shall be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." Consistent with this mandate, several cases have extended workers' compensation coverage to posttermination injuries. In *Peterson* v. *Moran* (1952) 111 Cal.App.2d 766 [245 P.2d 540], an employee remained at the workplace after his discharge for the purpose of discussing with the employer the reasons for his termination, and he was injured. Despite the fact of the discharge, the court held the plaintiff was still an "employee" within the broadly protective purposes of the Act. A number of other cases support this view: Employees who were injured after discharge while retrieving tools at the employer's premises (*Mitchell* v. *Hizer* (1977) 73 Cal.App.3d 499, 506-507 [140 Cal.Rptr. 790]; *Mauerhan* v. *Markowitz* (1921) 8 I.A.C. 261), or picking up a final paycheck (*Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1963) 221 Cal.App.2d 140 [34 Cal.Rptr. 206]; cf. also, *Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196 [155 Cal.Rptr. 486] [employee suffered ill effects in part from emotional injury after termination while obtaining receipt for returned company property and retrieving personal effects]), have also been held to be employees, and the injuries suffered to have arisen out of the employment and in the course of the employment, for purposes of an award of workers' compensation benefits. ▮ The statutory language, "arising from and in the course of the employment," thus manifestly encompasses more than the period during which the contractual employment relationship technically exists.

If such technically postdischarge injuries are within the province of workers' compensation as to employees invoking the coverage of workers' compensation, it must follow that such injuries would come within the workers' compensation law even when the employee attempts to renounce workers' compensation remedies. Workers' compensation jurisdiction may not be simply conferred or avoided at the option of the employee. ▮ Moreover, if *postdischarge* injuries may come within the scope of workers' compensation, then a fortiori injuries resulting from the discharge itself will also ordinarily be covered by workers' compensation.

Our determination that injuries arising from termination of employment ordinarily arise out of and occur in the course of the employment within the

meaning of Labor Code section 3600 avoids the evidentiary nightmare that might result from application of the *Georgia-Pacific* dictum requiring differentiation between injuries, especially psychological injuries, caused by conduct leading up to the termination and injuries caused by the termination itself (*Georgia-Pacific, supra*, 144 Cal.App.3d 72). Accordingly, we conclude that both the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment.

This determination does not, however, resolve the issue whether the exclusive remedy provisions of the workers' compensation law act as a bar to all causes of action arising from a discharge. As we have explained, the provisions are intended to effectuate and implement the fundamental "compensation bargain" said to underlie the workers' compensation scheme. Where the injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain, a separate civil action may lie.

### a., Section 19683

Plaintiff's second cause of action is based on defendants' alleged violation of an express statute, section 19683, a "whistleblower" protection statute. The section prohibited the use of official authority by state officers or employees, or by any person, to discourage, interfere with, restrain or coerce any state employee from reporting in good faith to appropriate authorities any actual or suspected violation of law occurring on the job or directly related thereto. Section 19683 specifically provided that any person guilty of such wrongful conduct "may be liable in an action for civil damages brought against him by the offended party."[11]

---

[11] Section 19683 provided in pertinent part: "No state officer or employee nor any person whatsoever shall directly or indirectly use or threaten to use any official authority or influence in any manner whatsoever which tends to discourage, restrain, interfere with, coerce or discriminate against any other state officer or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Attorney General, or the Joint Legislative Audit Committee pursuant to Article 3 (commencing with Section 10540) of Chapter 4 of Part 2 of Division 2, or any other appropriate authority any facts or information relative to actual or suspected violation of any law of this state or the United States occurring on the job or directly related thereto. Any person guilty of such an act may be liable in an action for civil damages brought against him by the offended party. Notwithstanding the provision of Section 19682, a violation of this section shall not be a misdemeanor."

Section 19683 was repealed and reenacted in substantially the same form in 1982 (see Stats. 1979, ch. 584, § 3, p. 1831). In 1986, section 19683 was repealed altogether and new whistleblower provisions were added. (See Stats. 1986, ch. 353, §§ 4-5, pp. 1511-1512.) Government Code section 10548, a part of the Reporting of Improper Government Activities Act, now provides that any state employee may file a complaint with the State Personnel Board for acts or attempted acts of reprisal (using or attempting to use official authority or influence to intimidate, threaten, coerce or command any state employee for purpose of interfering with re-

 The Court of Appeal held that plaintiff's causes of action, insofar as they were based on section 19683, were barred because the allegations of physical injury placed the action within the scope of the workers' compensation law and insofar as section 19683 was in conflict with the Act, the court held that the provisions of the Act controlled as it was the "more specific" of the two statutory schemes. We do not agree.

First, there is considerable question whether the "general statute, specific statute" rule is applicable under these circumstances. Second, to the extent both statutes may be potentially applicable, the whistleblower statute (§ 19683) is the specific statute and the Act is the general statute, not vice versa.

 Generally, where two statutes do not purport to deal with the same subject matter, there is no need to resort to the rule of construction that the more specific statute controls. The statutes simply do not cover the same subject matter and therefore are not in conflict. (See *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 55 [113 Cal.Rptr. 852].)

Nevertheless, as this case demonstrates, there may be circumstances in which the two statutes are both potentially applicable to the same set of facts. While section 19683 authorized an action against "any person whatsoever" who misused official government authority for the purpose of retaliation, in many cases the retaliatory acts will have been committed by the employer or an agent of the employer. If the object of the retaliatory conduct is a state employee, both statutes would potentially apply.

 To the extent that both section 19683 and the Act might be applicable, we must look to the purposes served by the competing statutes to determine which controls. As earlier noted, the purpose of the workers' compensation law is to provide a comprehensive scheme of compensation for all employees for industrial personal injury or death. The purpose of an action under the whistleblower protection statute, however, is to provide redress to a certain limited class of employees (state employees), for dam-

---

porting of improper activity, as prohibited by Government Code section 10543). It further provides, in addition to possible fine, imprisonment and discipline, that any person who intentionally engages in reprisal for reporting improper governmental action *shall* be liable in a civil action for damages brought by the injured party, including punitive damages, provided the injured party has first filed with the State Personnel Board and the State Personnel Board has failed to make a decision on the complaint. Government Code section 10543 provides that *any employee who uses or attempts to use official influence or authority to interfere with reporting of improper activity* may be liable in an action for civil damages brought by the offended party.

Similar provisions for local agency employees are contained in Government Code section 53296 et seq., including provisions for civil liability for retaliatory action.

ages suffered as a consequence of the specific use of official power to deter a particular protected activity—the proper reporting of on-the-job or job-related unlawful government actions. Obviously, the goals and the subject matter governed by the whistleblower protection statute are far more narrowly circumscribed, more specific, than the Act. While it may appear that both statutes are applicable, section 19683 was clearly the more specific statute, and therefore was controlling. (See *People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].)

As we held in *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 215 [185 Cal.Rptr. 270, 649 P.2d 912], the provision of a statutory cause of action for violation of a right ordinarily includes all damages generally available to civil litigants. Defendants argue that section 19683 was intended to provide for recovery of only those classes of damages not otherwise already provided under other laws, i.e., that the Legislature did not intend the civil action to include any damages for personal injury, as those would be covered within workers' compensation, or for economic damages provided under the civil service system. We reject the contention.

If the Legislature had considered workers' compensation benefits and remedies under the Civil Service Act (Gov. Code, § 18500 et seq.) to be adequate, it would not have been neccesary to add the whistleblower statute, expressly "relating to the state civil service." (Preface to Stats. 1971, ch. 1259, § 1, p. 2473.) Indeed, under defendants' interpretation, the whistleblower statute would provide virtually no protection to the very category of employees it was designed to protect; only those state employees exempt from civil service and who did not suffer any disability as a result of the retaliatory harassment could be afforded any relief. (Cf. *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 429, fn. 6 [217 Cal.Rptr. 16, 703 P.2d 354] and related text.)

■ We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous. (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585]; *Gates* v. *Salmon* (1868) 35 Cal. 576, 587.) The whistleblower statute was a legislative expression intended to encourage and protect the reporting of unlawful governmental activities, and to effectively deter retaliation for such reporting. ■ The Legislature clearly intended to afford an *additional* remedy to those already granted under other provisions of the law; otherwise section 19683 would be rendered meaningless. (Cf. *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408 [261 Cal.Rptr. 384, 777 P.2d 157].) As cogently explained in *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794 [244 Cal.Rptr. 37], the evils addressed by the whistleblower statute are different from those ad-

dressed by the workers' compensation law, and the Legislature cannot have " 'intend[ed] that the objectives [to] be defeated by the bar of the exclusive remedy provision.' " (*Id.* at p. 807.) Thus, the Legislature's enactment of specific statutory protection for whistleblowing activity, including a civil action *for damages* incurred from official retaliatory acts, defines the protected activity as a specific statutory exception to the provisions of the workers' compensation law; such conduct lies well outside the compensation bargain.

■■■■ Accordingly, the Court of Appeal incorrectly determined that plaintiff could not, solely because of the allegations of physical injury, state a cause of action under section 19683.[12] The judgment as to this cause of action must therefore be reversed.

### b. Additional Causes of Action for Wrongful Termination

In his brief, plaintiff argued that he can state a cause of action for wrongful termination in violation of fundamental public policy (see *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167; *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]) despite the exclusive-remedy provisions because such a termination is not a legitimate risk of employment, i.e., it is conduct which falls outside the compensation bargain. At oral argument, however, plaintiff took the position that "this court need not reach the other causes of action insofar as this focused statutory remedy [i.e., under section 19683] will provide him relief." For this reason, and because the Court of Appeal has not yet had an opportunity to address these arguments, we will reverse the Court of Appeal's disposition of this cause of action and remand to the Court of Appeal to allow it to determine whether plaintiff may state a claim for wrongful termination in contravention of fundamental public policy. (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167.)

■ Plaintiff has also attempted to state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing. However, because plaintiff is a civil service employee, he cannot state such a cause of action. "[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to

---

[12] In the event of any overlap in the recovery of both compensation and damages, the employer must be allowed a credit against the judgment for any compensation already paid on account of an industrial injury arising from the same facts. (Cf. *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, 478-479; *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 636; *Pichon* v. *Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 501 [260 Cal.Rptr. 677].)

continue in employment beyond the time or contrary to the terms and conditions fixed by law." (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813-814 [135 Cal.Rptr. 386, 557 P.2d 970]; see also *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981]; *Valenzuela* v. *State of California* (1987) 194 Cal.App.3d 916, 920 [240 Cal.Rptr. 45].) Nor can plaintiff state a cause of action for *tortious* breach of the implied covenant of good faith, since that cause of action, in the employment context, cannot support an award of tort damages. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654.) Accordingly, we will affirm the Court of Appeal's decision with respect to this cause of action.

Finally, plaintiff has alleged a cause of action simply for "wrongful termination." We affirm the Court of Appeal's disposition with respect to this cause of action because it merely duplicates the additional claims based upon the alleged wrongful termination.

### 2. Other Causes of Action

#### a. Interference with Business Relationship and Inducement of Breach of Contract

Plaintiff has not set forth a viable cause of action for inducement of breach of contract or interference with prospective economic advantage. ▇▇▇ It is difficult to identify precisely what cause of action plaintiff intended to allege with respect to the so-called "interference with a business relationship." The tort of interference with employment relations (see Civ. Code, § 49) was intended to codify a common law action by a master for loss of the services of a domestic servant; in any event, it is inapplicable to a business employee. (*I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327 [220 Cal.Rptr. 103, 708 P.2d 682].)

▇▇▇ With respect to the tort of interference with prospective economic advantage, plaintiff's pleading has identified no "prospective economic advantage" other than the continuation of his employment relationship. Thus, as is suggested by the alternative title given this cause of action, it is in reality identical in substance to plaintiff's claim for inducement of breach of contract. It is axiomatic, however, that there can be no action for inducement of breach of contract against the other party to the contract. (*Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 998-999 [135 Cal.Rptr. 720].) ▇▇▇ It is also well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72-73 [35 Cal.Rptr. 652].)

Here, the parties against whom plaintiff seeks recovery on this cause of action are plaintiff's supervisors: agents of the employer who are vested with the power to act for the employer (rightly or wrongly) in terminating plaintiff's employment. For purposes of this cause of action, then, these defendants stand in the place of the employer, because the employer—the other party to the supposed contract—cannot act except through such agents.

Thus, there is no viable "inducement of breach of contract" or "interference with economic advantage" that is distinguishable from a cause of action for breach of contract. As we have held, however, plaintiff, a state civil service employee, does not have a contract of employment. Plaintiff improperly seeks to cast this cause of action in tort to obtain recovery to which he is not entitled.

The demurrer to the fifth cause of action was properly sustained.

### b. Intentional Infliction of Emotional Distress

Plaintiff's sixth cause of action is for intentional infliction of emotional distress.

Here, plaintiff incorporated by reference into his cause of action for intentional infliction of emotional distress all the allegations of his previous causes of action. In addition, he pleaded certain facts designed to show that defendants' conduct was intentional, malicious and outrageous, to wit, statements by Jack Reagan, deputy director of the Department, to the effect that he would " 'do it [(terminate plaintiff)] again if I had to,' " and that " 'If it had been anybody else but [plaintiff], we wouldn't be doing it,' " as well as a statement by defendant Shuttleworth to the effect that he knew the termination would not be upheld, but he " 'just wanted to cause [plaintiff] as much grief as possible.' "

To the extent plaintiff purports to allege any distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy, but rather directed at the *intentional, malicious* aspects of defendants' conduct (" 'to cause [plaintiff] as much grief as possible' "), then plaintiff has alleged no more than the plaintiff in *Cole* v. *Fair Oaks Fire Protection Dist., supra*, 43 Cal.3d 148, i.e., that the employer's conduct caused him to suffer personal injury resulting in physical disability. *Cole* therefore controls. The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions.

### c. Violation of Civil Rights

Plaintiff's second amended complaint alleged a cause of action for violation of civil rights under 42 United States Code section 1983. The trial court sustained a demurrer to that cause of action without leave to amend and plaintiff therefore did not replead it in his third amended complaint. On appeal, however, he contended the demurrer should have been overruled. The Court of Appeal agreed and, in the unpublished portion of its opinion, reversed the judgment of dismissal with respect to this claim against the individual defendants, although the judgment as to the state and the Department was affirmed. Neither plaintiff nor defendants appear to challenge the judgment of the Court of Appeal in this respect. The judgment of the Court of Appeal will therefore be affirmed, reinstating the cause of action for violation of civil rights against the individual defendants, together with the ancillary cause of action for attorney fees.

### D. Additional Issues

Defendants raise a number of additional issues, including claims that they are immune from "malicious prosecution" (Gov. Code, §§ 821.6, 815.2), that plaintiff's causes of action are barred by Government Code section 910 because they were not adequately described in his administrative claim, and that the prerequisite administrative claim was not timely (Gov. Code, § 911.2).

As we have noted, these arguments were raised in the trial court and in the Court of Appeal, but, because of the resolution of the case in the Court of Appeal on the basis of physical injury and the workers' compensation exclusivity provisions, that court did not address these issues. In view of our decision on the primary issue in the case, the matter will be remanded to the Court of Appeal to permit it to consider the issues not addressed in its earlier opinion. (Cal. Rules of Court, rule 29.4(b).)

### V. Disposition

For the reasons above stated, the judgment of the Court of Appeal is affirmed as to the first (wrongful termination), fourth (breach of contract and implied covenant of good faith and fair dealing), fifth (interference with business relationship), sixth (intentional infliction of emotional distress) and eighth (civil rights and ancillary attorney fees) causes of action. The judgment is reversed as to the second (wrongful termination in violation of former Gov. Code, § 19683) and third (wrongful termination in violation of fundamental public policy) causes of action.

The matter is remanded to the Court of Appeal for further proceedings consistent with this opinion, including consideration of those issues not previously determined. (Cal. Rules of Court, rule 29.4(b).)

Lucas, C. J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.

Mosk, J., concurred in the judgment.