# IN THE SUPREME COURT OF CALIFORNIA

WANDA M. BROWN,
Plaintiff and Respondent,

v.

CITY OF INGLEWOOD et al.,
Defendants and Appellants.

S280773

Second Appellate District, Division One
B320658

Los Angeles County Superior Court
21STCV30604

July 7, 2025

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

BROWN v. CITY OF INGLEWOOD

S280773


Opinion of the Court by Jenkins, J.


California's Legislature has built a "powerful network" of "whistle-blower protection laws . . . available to those who seek to expose wrongdoing." (*Garcetti v. Ceballos* (2006) 547 U.S. 410, 425.) Labor Code section 1102.5,[1] a part of that network, "provides whistleblower protections to employees." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709; § 1102.5, subd. (b) ["An employer . . . shall not retaliate against an employee"].) For purposes of section 1102.5, the Legislature has defined the term "employee" so it "includes, but is not limited to, any individual employed by the state or any subdivision thereof, any county, city, city and county, including any charter city or county, and any school district, community college district, municipal or public corporation, political subdivision, or the University of California." (§ 1106.) In this case, we consider whether an elected treasurer of the City of Inglewood is an employee under section 1106 who may invoke section 1102.5's protections and sue for retaliation. We conclude such an elected official may not invoke the statute's protections. Because the Court of Appeal reached the same conclusion, we affirm its judgment.

---

[1] Further unspecified statutory references are to the Labor Code.

1

## I.     BACKGROUND

Wanda Brown became the City of Inglewood's elected treasurer in 1987.  In late 2019 and early 2020, Brown, still occupying that role, wrote to the city and several of its officials, including its mayor and councilmembers, raising concerns about the city's financial affairs.  In particular, she alleged the mayor had approved an overpayment of approximately $77,000 to a city contractor and thereby violated Penal Code section 424's prohibition on misappropriating public funds.  According to Brown, the city and its officials mistreated her after she leveled this allegation.  Specifically, she alleges the following retaliatory actions:  loss of her "seat" at city council meetings; exclusion from several city committees; reduction of her multi-million dollar investment authority to $50,000; restrictions on her use of investment software; deactivation of her computer; improper exclusion from city hall based on coronavirus testing requirements; removal from her role as General Auditor; loss of access to city financial documents; removal of approval authority for certain vendor requests; and reduction of her monthly salary as treasurer from $8,000 to $1,404.  (See City of Inglewood Charter, art. IV, § 2 ["The council shall by ordinance fix the salaries and compensation of all officers of the city"]; *id.*, § 1 [a "city treasurer" is an officer of the city]; cf. Gov. Code, § 36517 [for general law cities, "the city treasurer shall receive, at stated times, a compensation fixed by ordinance or resolution"].)    Perceiving these actions to be unlawfully

motivated, Brown sued the city, its mayor, and its council members for retaliation under Labor Code section 1102.5.[2]

Defendants then filed a motion to strike under California's anti-SLAPP statute, a procedural device that "calls for early dismissal of meritless lawsuits if they arise from a defendant's acts in furtherance of free speech rights in connection with a public issue. (Code Civ. Proc., § 425.16, subd. (b)(1).)" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 867.) In their motion, defendants argued Brown's section 1102.5 retaliation cause of action lacked merit because the statute protects employees, and Brown, as an elected official who could not be hired or fired from office, was not an employee within the statute. Defendants referenced Brown's statement to a local newspaper: "I'm not an employee" but rather "elected by the people to be their eyes, ears, and voice."[3]

Brown, in opposition, argued elected city officials like herself were employees within the meaning of the statute. To support her claim of an employee-employer relationship, Brown noted her regular paychecks and annual W-2 forms, which showed typical deductions for an employee's taxes and benefits, such as health insurance, retirement, and workers'

---

[2] Brown also alleged causes of action for defamation and intentional infliction of emotional distress. Those claims are not at issue.

[3] Defendants also disputed Brown's characterization of events, asserting that the mayor's overpayment was a mistake the city timely corrected, Brown's allegations of wrongdoing arose only after the city rejected her request for lifetime health benefits, and the reduction of the treasurer's duties and salary were legitimately motivated.

compensation. Brown also referenced the city's power to control her job duties and salary, and the actions it took to reduce both.

The trial court denied defendants' anti-SLAPP motion and declined to strike Brown's section 1102.5 retaliation cause of action.[4] It reasoned her claim did not implicate the anti-SLAPP statute, because it arose from the alleged reprisals, not from defendants' speech-related activities pertaining to governance. (Cf. *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1004 [distinguishing protected deliberations from certain actions that follow them].) Given its conclusion, the trial court's anti-SLAPP ruling did not address whether Brown was an employee.

The Court of Appeal, exercising its jurisdiction over orders denying anti-SLAPP relief (Code Civ. Proc., § 425.16, subd. (i)), reversed the denial as to the individual defendants (*Brown v. City of Inglewood* (2023) 92 Cal.App.5th 1256). The Court of Appeal first concluded Brown's section 1102.5 retaliation cause of action, as to those defendants, did arise from activity the anti-SLAPP statute protects. (*Id.* at p. 1264; see generally *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422, 426 [noting a "distinction between public agencies and individual officials" while holding that "council members' votes, as well as statements made in the course of their deliberations at the city

---

[4] As noted, *infra* note 2, Brown's complaint raised other causes of action. Defendants' anti-SLAPP motion challenged those claims, too. The trial court struck a portion of the cause of action for intentional infliction of emotional distress and the entire cause of action for defamation, citing Civil Code section 47, which bestows privileges on government officials making statements while discharging official duties and on those making statements in official proceedings.

council meeting where the votes were taken, qualify" for protection under the anti-SLAPP statute].) Given its conclusion that the anti-SLAPP statute applied to Brown's retaliation claim against these individual defendants, the Court of Appeal then addressed whether Brown had shown "a probability" she would "prevail" on the merits of her claim. (Code Civ. Proc., § 425.16, subd. (b)(1).) The Court of Appeal found no such probability because, as an elected official, Brown was not an employee who could invoke section 1102.5's protections. (*Brown,* at p. 1264.) In reaching this conclusion, the court relied on section 1106's language, which defines "employee" for purposes of section 1102.5 and does not mention elected officials. The court contrasted section 1106's language with that of section 3351, which expressly defines the term "employee" in the workers' compensation context to include such elected officials. The court concluded that this linguistic difference confirmed the Legislature's intent to exclude elected officials from section 1106, and thus from section 1102.5. (*Id.* at p. 1265.) And because it found the statute's language to be "clear and unambiguous" on this question, the court declined Brown's request to consider the common law to elucidate which employees sections 1106 and 1102.5 include. (*Ibid.*)

We granted review and limited the issue to be briefed and argued to the following: "Are elected officials employees for purposes of whistleblower protection under Labor Code section 1102.5, subdivision (b)?"

## II.  DISCUSSION

The question before us — whether the term "employee" in section 1102.5 includes elected officials such as Brown — is one of statutory interpretation and is governed by well-established

principles. "The proper interpretation of a statute is a question of law we review de novo." (*People v. Curiel* (2023) 15 Cal.5th 433, 461.) " ' " ' "[O]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, [we] must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, [we] may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " ' " (*In re N.R.* (2023) 15 Cal.5th 520, 538–539.) After reviewing the statute's language, along with all the pertinent indicia of legislative intent, we conclude that section 1102.5 does not cover elected officials such as Brown.

## A. Statutory Text

We begin with the text of sections 1102.5 and 1106. Section 1102.5 prohibits an "employer" from "retaliat[ing] against an employee" who blows the whistle on wrongdoing to authorities.[5] (§ 1102.5, subd. (b).) "An employee injured by

---

[5] The statute provides in full: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the

prohibited retaliation may file a private suit for damages." (*Lawson v. PPG Architectural Finishes*, *supra*, 12 Cal.5th at p. 709.) Section 1106, which defines the term " 'employee' " for "purposes of Sections 1102.5," states that the term "includes, but is not limited to, any individual employed by the state or any subdivision thereof, any county, city, city and county, including any charter city or county, and any school district, community college district, municipal or public corporation, political subdivision, or the University of California." (§ 1106.)

Section 1106, although defining the term "employee" to include various public entity employees, does not state whether an "employee" or an "individual employed" by a government entity includes an elected official. Nor does the term "employee" itself provide the answer. Black's Law Dictionary, to which both parties refer, suggests the definition of employee depends on context. (See generally *People v. Braden* (2023) 14 Cal.5th 791, 804 [noting potential aid of dictionary definitions in statutory interpretation]; see also *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1296 [noting the limitations of dictionary definitions].) In its 1990 edition, published two years before section 1106's enactment, Black's Law Dictionary explained that although the term "employee" may include "one who works for an employer," the term "must be distinguished

---

violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (§ 1102.5, subd. (b).)

from 'independent contractor,' 'officer,' 'vice-principal,' 'agent,' etc." (Black's Law Dictionary (6th ed. 1990) p. 525.) The dictionary cautioned that "[t]he term is often specially defined by statutes (e.g. workers' compensation acts; Fair Labor Standards Act), and whether one is an employee or not within a particular statute will depend upon facts and circumstances. In corporation law [for instance], 'employee' includes an officer but not a director." (Black's Law Dictionary (6th ed. 1990) p. 525.)

An earlier, 1951 version of the dictionary, which both parties discuss even though it predates section 1106 by nearly forty years, contains a lengthier definition of the term that, despite its distance from section 1106's enactment, underscores the term's context-specific nature. The 1951 definition notes the word employee "may be more extensive than 'clerk' or 'officer,' and may signify any one in place, or having charge or using a function, as well as one in office," but also states the word refers "usually only to clerks, workmen, laborers, etc., and . . . rarely to the higher officers of a corporation or government." (Black's Law Dictionary (4th ed. 1951) p. 617.) A comment to the 1951 definition echoes what would become part of the later, 1990 definition: "Employee" must be distinguished from 'independent contractor,' 'officer,' 'vice-principal,' 'agent,' etc. The term is often specially defined by statutes: and whether one is an employee or not within a particular statute will depend upon facts and circumstances." (Black's Law Dictionary (4th ed. 1951) p. 618.)

Consistent with the observation in Black's Law Dictionary that the term "employee" is often statute-specific, California statutes, in defining the term "employee" or "public employee," sometimes expressly include elected officials and sometimes expressly exclude them. Examples of the former include

statutes that identify persons who may receive workers' compensation protections (Lab. Code, § 3351, subd. (b) [defining "employee" as "every person in the service of an employer under any appointment or contract of hire or apprenticeship . . . and includes [¶] (b) All elected and appointed paid public officers"])[6]; persons who may obtain restraining orders against workplace violence (Code Civ. Proc., § 527.8, subd. (b)(3) [" 'Employee' also includes . . . elected and appointed public officers"]); certain public pensioners (Gov. Code, § 7522.04, subd. (h) [" 'Public employee' " means an officer, including one who is elected or appointed, or an employee of a public employer"]; and persons subject to unemployment insurance tax laws (Unemp. Ins. Code, § 13004 [" 'Employee' . . . includes an officer, employee, or elected official of the United States, a state, territory, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing"].)

Examples of statutes that expressly exclude elected officials from the definition of "employee" identify persons

---

[6]    As noted, the appellate court below focused on comparing section 1106 with section 3351, and did not mention the other statutes we reference. (*Brown v. City of Inglewood, supra,* 92 Cal.App.5th at p. 1265.)  Nothing indicates that the Legislature, when it added section 1106 years after section 3351, saw these two sections as related.  Thus, a comparison of these statutes has no unique or especially strong probative value. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 218 [Even "[w]here a provision 'contained in a related statute was added by amendment many years after the enactment of the statute containing no such provision,' and where 'it is not apparent to us that . . . the Legislature was necessarily concerned with anything beside[s]' the related statute, we have refused to ascribe an intent to the Legislature merely on the basis of negative inference"].)

within the regulatory purview of the state's Department of Human Resources Agency (Gov. Code, § 19815 [" 'Employee' . . . means . . . all employees of the executive branch of government who are not elected to office"]; those who may form public employee bargaining organizations (Gov. Code, § 3501, subd. (d) [" 'Public employee' means any person employed by any public agency . . . excepting those persons elected by popular vote or appointed to office by the Governor of this state"]; Gov. Code, § 3540.1, subd. (j) [" 'employee' means a person employed by a public school employer except persons elected by popular vote, persons appointed by the Governor of this state, management employees, and confidential employees"]; see *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 537); and government workers whose discipline may be discussed in closed legislative sessions (Gov. Code, § 54957, subd. (b)(4) [" 'employee' . . . shall not include any elected official"]; see *Hofman Ranch v. Yuba County Local Agency Formation Com.* (2009) 172 Cal.App.4th 805, 807).

That statutes vary with respect to expressly defining the term "employee" as including or excluding elected officials shows that section 1106's mere use of the term "employee" or "employed" does not conclusively resolve the question before us. Nor can we derive an answer from language in the statute stating that the term "employee includes, but is not limited to, any individual employed" by various public entities, such as the state, counties, and cities. (§ 1106.) The phrase "not limited to" must be read in conjunction with the examples the statute sets forth — here, individuals "employed by" various public entities. " ' "[I]ncluding, but not limited to" is a phrase of enlargement' " but not necessarily a phrase without limits. (*People v. Giordano* (2007) 42 Cal.4th 644, 660.) "While the proviso 'including, but

not limited to' 'connotes an illustrative listing,'" the "specific examples" listed may restrict the meaning of the defined term. (*People v. Arias* (2008) 45 Cal.4th 169, 181, 182.) This follows from the interpretive canon known as *ejusdem generis*, meaning "of the same kind." (*Id.* at p. 180.) The canon, which "'"applies whether specific words follow general words in a statute or vice versa,"'" instructs that "'the general term or category is "restricted to those things that are similar to those which are enumerated specifically."'" (*Ibid.*) It is based on the following logic: Had the Legislature "'intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.'" (*Ibid.*; see also *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 342; *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 50–51; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1390–1391.) Given that each of the examples of employees section 1106 lists recursively invokes the earlier phrase "employed by," the phrase "but not limited to" does not indicate an intent to reach beyond employees and does not resolve the specific question before us: whether the term "employee," as section 1106 defines it, encompasses elected officials such as Brown. Because the statutory text is inconclusive, we consider additional context and history.

## B.   Context and History

When "words themselves provide no definitive answer," we look to other interpretative aids such as legislative history and "other statutes [that] apply to similar or analogous subjects." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008;

accord, *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642 ["we interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent"].) Relevant contextual and historical cues — including the legislative history of section 1106 and of related statutes that informed section 1106's enactment — lead us to conclude that the term "employee" in section 1106 was meant to exclude elected officials such as Brown.

Initially, section 1106's legislative history suggests a particular purpose of protecting rank-and-file employees from supervisors and managers, not protecting elected officials. According to legislative analyses, "[p]roponents believe[d] that public employees should be encouraged to report illegal activities by supervisors and managers without fear of retaliation," and these proponents expressed concern that, under current laws, public employees' grievances were sometimes being administratively adjudicated by the very supervisors who had allegedly retaliated against them. (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as amended Apr. 21, 1991, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as amended Apr. 21, 1992, pp. 2–3 [same].) One legislative analysis accordingly characterized the "[n]eed for the bill" as follows: "[G]overnment employees who report illegal activity by supervisors deserve the same rights of redress against retaliation as private sector employees . . . . [D]uring times of fiscal restraint by public agencies, laws should encourage workers to make public illegal activity by supervisors and managers." (Assem. Com. on Labor

and Employment, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as introduced Feb. 21, 1992, p. 2.)

Notably, the impetus for legislative action was a news story about a rank-and-file municipal employee. "The bill arises from a recent case of a local building inspector in Pomona who complained of an act of retaliation because he reported to the local police that his supervisor had ordered him to violate the building inspection law. The Los Angeles District Attorney declined to prosecute the supervisor on the basis that the anti-retaliation provisions of the Labor Code applied only to private sector workers." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as amended Apr. 21, 1992, p. 2; accord, Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as amended Apr. 21, 1991, p. 3; Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.), as introduced Feb. 21, 1992, p. 2.)

Elected officials differ from rank-and-file employees like the building inspector in Pomona discussed in section 1106's legislative history. They report to the electorate rather than managers or supervisors in a conventional sense. (See, e.g., *Essick v. County of Sonoma* (2022) 81 Cal.App.5th 941, 951 ["The county sheriff is a public official elected by Sonoma County voters, and as such, is ultimately responsible to them — not to the Board of Supervisors or anyone else in county government"].) When elected officials face retaliation, it is likely to come, as alleged in this case, from other elected colleagues, possibly through direct legislative action. Section 1106's legislative history reflects no consideration of subjecting such actions to judicial scrutiny despite the potential concerns arising from interjecting the courts into the legislative process. (See

*Tenney v. Brandhove* (1951) 341 U.S. 367, 378 ["In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed.  Courts are not the place for such controversies.  Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses"].)  Instead, we have a legislative focus on protecting rank-and-file public workers from the retaliation of supervisors or managers, which does not support a view of an employee as including an elected official such as Brown.

Neither is such a view supported by consideration of section 1106 in relation to the whistleblowing statutes that informed its enactment.  " ' "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' "  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87.)  We may look beyond the legislative history of the provision at issue to the history of related statutes.  (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 161–162; see *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.*, *supra*, 14 Cal.4th at p. 659 [" 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' "].)  Statutes that "relate to the same person or thing, or class of persons or things, or have the same purpose or object" are said to be "in pari materia" and "should 'be construed together so that all parts of the statutory scheme are given effect.' "  (*Kaanaana v. Barrett Bus. Servs.* (2021) 11 Cal.5th 158, 175.)  This "principle of harmonization" has important limits.  (*Ibid.*)  Courts are not authorized to "rewrite statutes." (*Ibid.*)  "Where the Legislature chooses to define the same term differently in two different

provisions, neither definition should be 'rewritten under the guise of an in pari materia construction.' " (*Ibid.*; accord, *People v. Valentine* (1946) 28 Cal.2d 121, 142 [" 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject (in this case, the *same* subject) is significant to show that a different intention existed' "].)

Because section 1102.5 addresses whistleblower protections and section 1106 confers those protections on public employees, it is reasonable, in determining the scope of "employee" under section 1106, to consider other statutes that address public worker whistleblowing. (See *Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1201 [comparing the language in various whistleblower statutes]; accord, *Fuerst v. Hous. Auth. of the City of Atlanta* (11th Cir. 2022) 38 F.4th 860, 872, fn. 9 ["because [two different Federal laws] both deal with whistleblower protections relating to the misuse of federal funds, we interpret them together"].) Especially illuminating is the way pre-existing public worker whistleblower statutes, which informed the Legislature's 1992 expansion of section 1102.5 to include public employees, defined the workers subject to their protections.

The Legislature enacted section 1102.5's whistleblower protections in 1984. (Stats. 1984, ch. 1083, § 1; see *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 76.) At that time, the statute made no mention of public employees. Eight years later, when the Legislature enacted section 1106, it defined "employee" for purposes of section 1102.5 to include public employees (see Stats. 1992, ch. 1230, § 1). In doing so, it referenced a desire to address perceived limitations in three whistleblower statutes: section 1102.5 itself, the Reporting of

Improper Government Activities Act (Gov. Code, former § 10540 et seq., addressing state employees), and the Local Government Disclosure of Information Act (Gov. Code, § 53296 et seq., addressing local employees). (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 330–331 (*Campbell*); *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 20, fn. 11 (*Shoemaker*).)

In particular, the Legislature understood the then-current version of section 1102.5, which lacked any reference to public employees, as applying to private sector employees only. (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, pp. 1–2.) The Legislature also viewed state employees' options for redress under the Reporting of Improper Government Activities Act as too limited (*ibid.*) and, with respect to the Local Government Disclosure of Information Act, believed there was "currently very little protection for local public employees who must file a complaint pursuant to the procedures of the[ir] local agency" (*id.,* p. 2). Employers of local government workers, moreover, were not "subject to misdemeanor penalties" unless "malice [could] be proved." (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as proposed to be amended Apr. 21, 1992, pp. 1–3; see Gov. Code, § 53928.5, subd. (b).) Section 1106 would, in light of these observed shortcomings, expand the rights of public workers by "defin[ing] employees in the [section 1102.5] anti-retaliation law that applies to private sector workers to specifically include state and local governmental employees." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, p. 2; see generally *Campbell*, *supra*, 35 Cal.4th at p. 331 [discussing the legislative

history of section 1106 and concluding "[t]he addition of section 1106 . . . was intended to extend the rights available to private employees to include public employees, and nothing more"].)

Section 1106, however, in extending rights to public employees, took a different approach to defining the class of protected public workers than the two whistleblower statutes discussed in the section's legislative history. Notably, section 1106 did not speak in terms of officers. The Reporting of Improper Government Activities Act provided a civil damages action for retaliation to an injured "state employee or applicant for state employment" if a complaint to the State Personnel Board was filed and the board failed to make a decision on the complaint. (Gov. Code, former §§ 10548, subd. (c); *Shoemaker*, *supra*, 52 Cal.3d at p. 20, fn. 11, citing Stats. 1986, ch. 353, § 4–5, pp. 1511–1512; see also *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 891–893.)[7] The statute defined a protected "employee" as "any individual appointed by the Governor or employed or holding office in a state department or agency." (Gov. Code, former § 10542; see Stats. 1981, ch. 1168, § 7.) This definition expressly distinguished between employees, the term found in section 1106, and appointees of the

---

[7] The Reporting of Improper Government Activities Act also subjected "any person who intentionally engages in acts of reprisal . . . against a state employee" to a fine up to $10,000 and misdemeanor consequences. (Gov. Code, former § 10543, subd. (b).) "[S]tate civil service employees" who violated the provision were subject to further discipline. (*Ibid.*)

Governor and those holding state office, terms not found in that section.[8]

The second law referenced in section 1106's legislative history — the Local Government Disclosure of Information Act — contained, at the time of section 1106's enactment, provisions "[s]imilar" to those in the Reporting of Improper Government Activities Act, but focused on "local agency employees." (*Shoemaker, supra,* 52 Cal.3d at p. 20, fn. 11.) The Local Government Disclosure of Information Act provided that "any local officer, manager, or supervisor who" maliciously (Gov. Code, § 53298.5, subd. (b)) took a prohibited "reprisal action against any employee or applicant for employment" who filed a

---

[8]    The definition of "employee" in the Reporting of Improper Government Activities Act long had this textual feature. (Stats. 1979, ch. 584, § 1 [" 'Employee' means any individual appointed by the Governor or employed or holding office in a state department or agency"]; Stats. 1981, ch. 1168, § 7 [same].) The Reporting of Improper Government Activities Act relates to former Government Code section 19683, an anti-retaliation provision first enacted in 1971 and retained in various forms alongside these newer provisions until 1986. (1971 Stats., ch. 1259, § 1; Stats. 1979, ch. 584, §§ 2–3, 5; *Shoemaker, supra,* 52 Cal.3d at p. 20, fn. 11.) This earlier law protected a "state officer or employee" who made protected reports of illegality to appropriate authorities. (1971 Stats., ch. 1259, § 1; Stats. 1979, ch. 584, §§ 2–3.)

The successor to the Reporting of Improper Government Activities Act is the California Whistleblower Protection Act, located at sections 8547 through 8547.15 of the Government Code. (See *Miklosy, supra,* 44 Cal.4th at p. 893.) Upon its enactment in 1993, this successor statute defined an employee as any "individual appointed by the Governor or employed or holding office in a state agency . . . ." (1993 Stats., ch. 12, § 8.) Today, the definition has additional components, but retains this language. (Gov. Code, § 8547.2, subd. (a)(1)(A).)

statutorily authorized complaint (Gov. Code, § 53298, subd. (a)) "shall be individually liable for damages in an action brought against him or her by the injured employee" (Gov. Code, § 53298.5, subd. (b)). The statute defined an employee — a person who could file a complaint and bring suit for reprisal — as "any person employed by a local agency." (Gov. Code, § 53296, subd. (e); see Stats. 1986, ch. 353, § 7.) By contrast, only officers, managers, and supervisors could commit prohibited acts of reprisal. (Gov. Code, § 53298, subd. (a).) While the act defined managers and supervisors as a subclass of "employee[s]" with significant administrative or oversight responsibilities (Gov. Code, § 53296, subds. (f), (g)), it defined officers as "any appointed member of a local board, commission, or other governing body who supervises or is responsible for the work of one or more local agency employers" (Gov. Code, § 53296, subd. (h)). Thus, the Local Government Disclosure of Information Act singled out appointed officials, as opposed to elected ones, and, unlike section 1106, distinguished in its text between officers and employees.[9]

It is noteworthy that these pre-existing whistleblower statutes both refer to officers whereas section 1106 does not. This omission takes on added significance in light of the neighboring sections in the Labor Code chapter that contains section 1106, entitled "Political Affiliations." In particular, section 1104 has, from its enactment some 55 years before section 1106, differentiated between employees and officers.

---

[9]    An earlier version of the Local Government Disclosure of Information Act would have offered protections to any "local agency officer or employee" (Assem. Bill No. 1916 (1985–1986 Reg. Sess.) as amended Jan. 9, 1986, § 5), but an amendment altered this language before enactment.

(Stats. 1937, ch. 90, § 1104, p. 212.) Section 1104 provides: "In all prosecutions under this chapter, the employer is responsible for the acts of his managers, *officers*, agents, and *employees*." (§ 1104, italics added.) Since enactment, section 1106 not only has provided the definition of "employee" for section 1102.5, but also for section 1104. (Stats. 1992, ch. 1230, § 1.) Section 1104, then, expressly distinguished between employees, as defined by section 1106, and officers.

That section 1106 omits reference to those holding office or to officers sheds light on whether its definition of "employee" includes elected officials. We first note that the phrase "holding office," found in the state-worker statute (Gov. Code, former § 10542) but not in section 1106, generally includes not only appointed officials but also elected ones.[10] We have long used the foregoing phrase to include elected officials. (*Barrett v. Hite* (1964) 61 Cal.2d 103, 105 ["The word 'incumbent' is, of course, sufficiently broad to include all persons holding office . . . whether elected by the voters or appointed by the Governor"]; *Hartford Accident & Indemnity Co. v. City of Tulare* (1947) 30 Cal.2d 832, 836 ["[A] public officer who continues to perform the duties of the office and holds office beyond the term for which he was elected or appointed, holds office until his successor is selected and qualifies"].) The Legislature has used the phrase in a similarly broad fashion. (E.g., Gov. Code, § 36512 ["A

---

[10] "There is a clear and well-understood distinction between appointment and election." (*Mono County v. Industrial Acc. Com.* (1917) 175 Cal. 752, 754.)

person elected to fill a vacancy holds office for the unexpired term of the former incumbent"].)[11]

We next note authorities that have comparatively evaluated the concepts of public employees and officers. Before section's 1106 enactment in 1992, we had noted — consistent with the complexity described in the Black's Law Dictionary definitions of "employee" discussed above — that " '[i]t is difficult, perhaps impossible, to frame a definition of . . . public officer which will be sufficiently accurate, both as to its inclusion and its exclusion, to meet the requirements of all cases.' " (*In re M.M.* (2012) 54 Cal.4th 530, 536, quoting *Spreckels v. Graham* (1924) 194 Cal. 516, 530.) But despite any potential difficulty in comprehensively defining public officers in comparison to public employees — a task we do not undertake here — a law including public employees while omitting public officers suggests an intent to exclude elected officials. Indeed, elected positions would seem to epitomize " 'the greater importance, dignity, and

---

[11] Other examples abound. (Ed. Code, § 19427 ["Each library trustee shall hold office until his successor is elected and qualified"]; Health & Saf. Code, § 6482 [elected board members "each holds office until the election and qualification of" a successor]; *id.*, § 6494 [an "assessor holds office . . . until the election and qualification of" a successor]; Health & Saf. Code, § 6580.2 ["An officer elected or appointed pursuant to Section 6580.1 shall hold office . . . ."]; Gov. Code, § 7522.70 [concerning "elected public officer[s]" who are "convicted during or after holding office"]; Gov. Code, § 73757 [upon abolition of the position of marshal, "[e]ach elected marshal holding office . . . shall become an employee"]; Gov. Code, § 87460 [prohibiting elected officers from receiving loans from those affiliated with an agency "in which the elected officer holds office"]; Lab. Code, § 4728 [providing benefits to a "dependent of an elected public official . . . killed while holding office"].)

independence' " that might distinguish officers from employees. (*Patton v. Board of Health* (1899) 127 Cal. 388, 395, quoting *People ex rel. Throop v. Langdon* (1879) 40 Mich. 673, 682; see Mechem on Public Offices, § 2 [quoting *Throop*].)

Two examples illustrate the point.  In *Wade v. Board of Administration* (1945) 67 Cal.App.2d 745, the court held that a county charter's grant of retirement benefits to "employees" did not include elected officials such as the county clerk.  (*Id.* at pp. 746, 748–752.)  The electorate had twice rejected proposals to add coverage for elected officials (*id.* at pp. 747–748) and the charter elsewhere used the term "officer" or "elective officer" when referring to such officials, rather than using the term "employee" to include them (*id.* at p. 749).   "The court acknowledged that in some cases an officer may be an employee, but an elective officer was not an employee" in that context. (*Neville v. County of Sonoma* (2012) 206 Cal.App.4th 61, 79.)

In another instance, the Legislature amended a statute permitting government bodies to hold private sessions to discuss personnel matters.   (Stats. 1975, ch. 959, § 8, p. 2241.) Previously, Government Code section 54957 had allowed discussion during closed sessions of matters involving a "public officer or employee," but the Legislature amended the provision to allow closed sessions only for "employees," deleting the term "officer" and defining the term "employee" to exclude appointed officers except the occupants of certain enumerated "nonelective positions."  The amendment did not expressly address the fate of elected officials.  (Compare Stats. 1975, ch. 959, § 8[12] with

---

[12]     The 1975 definition of employee read, in full:   "For the purposes of this section, the term 'employee' shall not include

Stats. 1971, ch. 587, § 1; see 59 Ops. Cal. Atty. Gen. 266 (1976) [discussing the amendment].) The Attorney General, evaluating the amendment in the late 1970s, repeatedly opined, "it would appear that in no event would an officer holding an elective office . . . fall within the ambit of section 54957." (59 Ops. Cal. Atty. Gen. 266 (1976); 61 Ops. Cal. Atty. Gen. 10, 12 (1978); 61 Ops. Cal. Atty. Gen. 283, 286 (1978).) In 1980, the Legislature codified this view, modifying the definition of employee to exclude "any person elected to office" (Stats. 1980, ch. 1284, § 21). As earlier noted, that exclusion remains in the present version of the statute. (Gov. Code, § 54957, subd. (b)(4).)

Although it is not informative to compare section 1106's mere use of the term "employee" or "employed by" to the wide swath of statutes both including and excluding elected officials from the term "employee" (see *infra*, Part II.A), it *is* informative to view section 1106 in the more specific context of the statutes legislators had in mind during section 1106's enactment that referenced officers and the existing legal pronouncements governing the categorization of elected officials. " '[T]he Legislature " 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended

---

any person appointed to an office by the legislative body of a local agency; provided, however, that nonelective positions of city manager, county administrator, city attorney, county counsel, or a department head or other similar administrative officer of a local agency shall be considered employee positions; and provided, further that nonelective positions of general manager, chief engineer, legal counsel, district secretary, auditor, assessor, treasurer or tax collector of any governmental district supplying services within limited boundaries shall be deemed employee positions." (Stats. 1975, ch. 959, § 8, pp. 2241–2242.)

a statute in light thereof.' " ' " (*People v. Scott* (2014) 58 Cal.4th 1415, 1424.)  The Legislature is also presumed to be aware of Attorney General opinions and their statutory constructions. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1042.)  Had the Legislature, when it enacted section 1106, wanted to include elected officers it could have taken cues from those related statutes or legal pronouncements.  (See *Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 893; *People v. Licas* (2007) 41 Cal.4th 362, 367 [finding a legislative intent to omit a statutory requirement after presuming legislative awareness of that requirement in a related statute].)  It did not.  Instead, the Legislature, with a focus on rank-and-file "employee[s] . . . employed by" public entities (§ 1106; see § 1102.5), sought "to extend the rights available to private employees to include public employees, and nothing more." (*Campbell*, *supra*, 35 Cal.4th at p. 331.)[13]

---

[13]    The parties do not discuss that the Legislature, after enacting section 1106, passed other public worker whistleblower statutes authorizing worker retaliation lawsuits that contain specific references to elected officials.  Government Code section 9149.35, part of the Legislative Employee Whistleblower Protection Act (Stats. 2018, ch. 2, § 1 (Assem. Bill No. 403)), subjects "an individual or entity that intentionally retaliates against a legislative employee" to a "civil action for damages brought by a legislative employee."  The term "legislative employee" expressly excludes "a Member of either house of the Legislature." (Gov. Code, § 9149.32, subd. (b).)  Education Code section 44114, part of the Reporting by School Employees of Improper Governmental Activities Act (Stats. 2020, ch. 531 (Assem. Bill No. 2472)), subjects "a person who intentionally engages in acts of reprisal . . . against a public school employee"

Although we have no occasion to address other aspects of the employee-officer distinction, context and history show the term "employee" in section 1106, which does not reference elected officials or officers, was meant to exclude elected officials such as Brown.

## C.    Public Policy

This interpretation of section 1106 aligns with a reasonable public policy choice. (See *In re N.R.*, *supra*, 15 Cal.5th at p. 539 [policy considerations may help resolve statutory ambiguity].) The parties disagree how public policy considerations should weigh in our analysis of sections 1102.5 and 1106. Brown argues that "no victim of retaliation in the

---

to an action for damages. (Ed. Code, § 44114, subd. (c).) Employee, in that statute, "means a person employed by a public school employer except persons elected by popular vote, persons appointed by the Governor of this state, management employees, and confidential employees." (Gov. Code, § 3540.1; see Ed. Code, § 44112, subd. (a) [invoking the government code definition].)

We "[o]rdinarily" give "subsequent legislative history . . . little weight in statutory interpretation." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 54, fn. 17; see *Reno v. Bossier Parish School Bd.* (1997) 520 U.S. 471, 484–485 ["the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"].) "[A]s time passes memories fade and a person's perception of [] earlier intention may change. Thus, even when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." (*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.* (1980) 447 U.S. 102, 118, fn. 13.) These later-enacted statutes, which post-date section 1106 by over 25 years, do not reveal the Legislature's intent with respect to section 1106's scope.

workplace should have their claim rejected simply because they are an elected official." Defendants, by contrast, argue that elected officials — given their political and public nature, given the incentives and opportunities that exist for them to speak out, and given the source of their authorities — are different from the average civil servant and warrant different treatment under section 1102.5. Citing *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981 and *Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1343–1344, defendants further assert that allowing elected officials to bring claims under section 1102.5 would risk chilling vigorous participation in, or interjecting the courts into, the legislative process, and that courts are rightly hesitant to subject the wisdom of legislative action to tort litigation.

Providing maximal protection for elected officials who speak out to blow the whistle on government wrongdoing is, as Brown suggests, one reasonable policy approach. Section 1102.5, after all, "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.*, *supra*, 19 Cal.4th at p. 77.) Whistleblower protections might be "substantially weakened" if elected officials are exempted from protections, "particularly because those officials will often be in a good position to identify and report fraud." (See *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States DOI* (9th Cir. 2018) 900 F.3d 1152, 1158.)

But defendants' concerns implicate other reasonable policy considerations. As noted earlier in Part II.B, any retaliation that elected officials face is likely to come, as alleged here, from official acts of elected colleagues who are themselves subject to the electorate's retention or dismissal through the

ballot box. The Legislature, consistent with statements made in cases explaining the basis for governmental immunity,[14] might reasonably wish to channel such intramural disputes to the electoral process rather than the courtroom. (*Tenney v. Brandhove*, *supra*, 341 U.S. at p. 378 ["Courts are not the place for such controversies"]; see *Bogan v. Scott-Harris* (1998) 523 U.S. 44, 52 ["the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability"].) Indeed, elected officials, serving fixed terms of office at the pleasure of their constituents, take on markedly different job protections and vulnerabilities than rank-and-file employees. Elected officials also have unique access to platforms from which to speak and to have their voices amplified, and they can use these platforms to identify wrongdoing in the first instance, which might win favor from the public, or to disincentivize, fend off, or highlight any retaliatory conduct.

Thus, the Legislature has sometimes deemed it appropriate to exclude elected officials from workplace protection laws. We have already mentioned two instances of our state Legislature — the Legislative Employee Whistleblower Protection Act and the Reporting by School Employees of Improper Governmental Activities Act — expressly excluding elected officials. (See *ante*, Part II.B, fn. 13.)

---

[14] Defendants' answering brief invokes the immunities from liability that the Government Claims Act (Gov. Code § 810 et seq.) provides to government officials. Defendants contend that allowing elected officials to bring claims under section 1102.5 would be in tension with these immunity statutes. But the question of these immunity statutes' application, whether to the city's officials or the city itself, is not before us.

And although they may be viewed as implementing federal-state comity concerns, a cadre of well-known federal employment statutes exclude state and local elected officials. The Family Medical Leave Act excludes elected officials of a state and its subdivisions. (*Nev. Dept. of Human Resources v. Hibbs* (2003) 538 U.S. 721, 739; 29 U.S.C. §§ 2611(3), 203(e)(2)(C).) The Age Discrimination in Employment Act excludes "elected officials and appointed policymakers at the state and local levels." (*Kimel v. Fla. Bd. of Regents* (2000) 528 U.S. 62, 68; 29 U.S.C. § 630(f).) Title VII excludes state and local elected officials from the employees it protects. (42 U.S.C. § 2000e.) So does the Fair Labor Standards Act. (29 U.S.C. § 203(e)(2)(C).)

Principles articulated in cases addressing retaliation claims under the First Amendment offer further insight into why the Legislature might reasonably wish to treat elected officials differently under section 1102.5. " '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." (*Nieves v. Bartlett* (2019) 587 U.S. 391, 398.) No statute comparable to section 1106 restricts who may bring First Amendment retaliation claims and courts have not precluded elected officials from bringing them. Such claims, when brought by elected officials, might vindicate not only those officials' own First Amendment rights, but also the franchise of their constituents. (*Houston Community College System v. Wilson* (2022) 595 U.S. 468, 481.) However, actions that might support an unelected individual's suit for retaliation might not support an elected official's suit. (*Id.* at pp. 479–480.) "In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers — and to continue exercising their free speech

28

rights when the criticism comes. . . . When individuals 'consent to be a candidate for a public office conferred by the election of the people,' they necessarily 'pu[t] [their] character in issue, so far as it may respect [their] fitness and qualifications for the office.' " (*Id.* at p. 478.) The Ninth Circuit has "emphasized that it is more difficult for elected officials to establish that they were subjected to an adverse action that offends the First Amendment because 'more is fair in electoral politics than in other contexts.' " (*Boquist v. Courtney* (9th Cir. 2022) 32 F.4th 764, 775–776.)

Exclusion of elected officials from section 1102.5 would not deprive such officials of relief potentially available under other whistleblower protections or other laws, including, as applicable, the First Amendment. Indeed, the very availability of such relief might have dissuaded legislators from bringing elected officials under section 1102.5's umbrella.[15] We need not catalog the scope of other potential legal protections available to elected officials, but we note, for instance, that challenges may be possible to municipal actions that destroy an office established by law. (*De Merritt v. Weldon* (1908) 154 Cal. 545, 549 [the "legislative body of the town may not effectually provide that there shall be no compensation at all [for a statutorily created elected office], or practically destroy the office by fixing the compensation at so low a figure that no one will discharge the duties thereof for the compensation fixed," but denying an elected official's petition for writ of mandate on the facts of the

---

[15] To be sure, legislators could have responded to the First Amendment's more limited protections for elected officials by ensuring that section 1102.5 applied to them. But, as noted, the legislative history of section 1106 is to the contrary, and, in fact, indicates no consideration of these First Amendment issues.

case]; *Rossi v. Brown* (1995) 9 Cal.4th 688, 693 [considering a petition for writ of mandate to challenge city ordinances as contrary to a city charter].)

Ultimately, even were section 1102.5 a superior vehicle for pursuing retaliation claims, the differential treatment of elected officials under whistleblower laws reflects a reasonable policy choice. The merits of Brown's contrary policy arguments are no more than "debatable" and do not compel us to adopt her reading of the statute. (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 781–782.) Brown's "argument is best directed to the Legislature, which can study the various policy and factual questions and decide what rules are best for society. Our role here is to interpret the statute, not to establish policy." (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1140.)

## D.   Common Law Employment Test

All this aside, Brown argues the lack of a detailed definition of the term "employee" in section 1106, including the circumstance that the definition neither expressly includes nor excludes elected officials, requires courts to "turn to [the] common law test" of employment to define that statutory term. Brown, citing *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 531 (*Ayala*), asserts that under a common law test, the city exercises such control over her as to compel her classification as an employee rather than an independent contractor. She points to her reduction in duties and salary and other features of her job that might suggest employment, such as her receipt of annual W-2 forms for tax purposes. We agree with defendants, however, that the common law test for

employment does not affect the resolution of the statutory interpretation question before us.

To be sure, the common law can inform our resolution of uncertainties present in the ordinary meaning of a statute's words. (*In re Newbern* (1960) 53 Cal.2d 786, 795; see *Harris v. City of Santa Monica, supra*, 56 Cal.4th at p. 218.) And, more specifically, we have stated that when " ' "a statute refer[s] to employees without defining the term[,] courts have generally applied the common law test of employment." ' " (*People v. Superior Court* (*Sahlolbei*) (2017) 3 Cal.5th 230, 235, quoting *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1087; accord, *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 (*Metropolitan Water*).) We have described this rule as "a specific application of the general rule that we do not presume the Legislature intends to abrogate the common law unless it ' " ' "clearly and unequivocally" ' " ' says so." (*Sahlolbei*, at p. 235.) The rule "applies when the common law test of employment would have been appropriate in the same context at common law." (*Ibid.*)

"But as we explained in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, the common law test of employment is not always appropriate beyond the tort context in which it was originally developed [to establish an employer's vicarious liability]. (*Id.* at pp. 350–351.) Outside of tort, rather than 'rigidly' applying the common law test, we look to the ' "history and fundamental purposes" ' of the statute at issue to determine whether the Legislature intended the test to apply." (*Sahlolbei, supra*, 3 Cal.5th at p. 235.)

Several previous decisions illustrate the point. In *Sahlolbei*, we declined to adhere to a common law conception of

the term "employee" because legislative history convinced us that the undefined terms "employee" and "officer" found in a conflicts of interest law (Gov. Code, § 1090) were both meant to encompass so-called "outside advisors" even if those advisors might have been classified under the common law test as independent contractors and not employees. (*Sahlolbei*, *supra*, 3 Cal.5th at pp. 234, 236–237.) Similarly, in *In re M.M.*, *supra*, 54 Cal.4th at pp. 541–545, we declined to impose common-law derived restrictions on the term "public officer" in a penal statute prohibiting resisting, delaying, or obstructing such officers when indicia of legislative intent pointed to the term having a broader scope.

In contrast, in *Metropolitan Water*, we addressed the proper interpretation of the Public Employees' Retirement Law (PERL), which makes "employees" members of CalPERS, the state's retirement system, but excludes " '[i]ndependent contractors who are not employees.' " (*Metropolitan Water*, at p. 499.) We rejected a government agency's request to read into PERL an exclusion from membership for workers hired by third-party labor suppliers, if they otherwise met the requirements to be employees under the common law test. (*Id.* at pp. 496, 509.) Given the lack of any definition of the term "employees" in PERL and given the indicia of legislative intent favoring *inclusion* within CalPERS of such workers, we held that the common law test should determine whether a worker was an employee eligible for CalPERS membership. (*Id.* at pp. 500, 502, 509.)

These cases demonstrate the adage that "canons of construction are but tools, 'guides to help courts determine likely legislative intent.' " Sometimes these "tools do not reveal a clear legislative intent." (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017–1018.) As we cautioned in *Sahlolbei*, the

"common law test of employment is not always appropriate beyond the tort context in which it was originally developed." (*Sahlolbei*, *supra*, 3 Cal.5th at p. 235, citing *S. G. Borello & Sons*, *supra*, 48 Cal.3d 341, at pp. 350–351.) Section 1102.5 "create[d] a right that did not exist at common law" (*Campbell*, *supra*, 35 Cal.4th 311, 328), and whether it includes or excludes elected officials for protection is an inquiry outside the context of determining the vicarious tort liability of hirers. The indicia of legislative intent discussed above, including history and purpose, show that sections 1102.5 and 1106 exclude elected officials such as Brown. We conclude the Legislature did not, despite this, expect the fact-specific common law test of *Ayala* that Brown cites to govern the fate of elected officials under the statute — officials who plainly are not hired or fired in a fashion similar to either employees or independent contractors typically assessed under that test. We do not foreclose the possibility that the common law might, in another context, offer guidance regarding the employee status of elected officials, but we do conclude the common law does not impact the outcome here.

## III. DISPOSITION

We conclude that elected officials such as Brown, the City of Inglewood's treasurer, fall outside the definition of the term "employee" in section 1106 and cannot assert the protections of section 1102.5. Accordingly, we affirm the judgment of the Court of Appeal.

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Brown v. City of Inglewood

---

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 92 Cal.App.5th 1256
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S280773
**Date Filed:** July 7, 2025

---

**Court:**  Superior
**County:**  Los Angeles
**Judges:**  Deirdre H. Hill

---

**Counsel:**

Miller Barondess, Mira Hashmall, Nadia Sarkis, Colin H. Rolfs and Eleanor Ruth for Defendants and Appellants.

Engstrom, Lipscomb & Lack, Walter J. Lack, Richard P. Kinnan and Christopher A. Kanne for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mira Hashmall
Miller Barondess, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
(310) 552-7560

Richard P. Kinnan
Engstrom, Lipscomb & Lack
11601 Wilshire Boulevard, 14th Floor
Los Angeles, CA 90025
(310) 552-3800